**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

C.S.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil No. 25-13326-RMB

**OPINION**

**APPEARANCES**:

Alan H. Polonsky
Polonsky and Polonsky
512 South White Horse Pike
Audubon, NJ 08106

*On behalf of Plaintiff*

Catherine Elisabeth Hamilton
Social Security Administration
Office of Program Litigation
6401 Security Boulevard
Baltimore, MD 21235

*On behalf of Defendant*

[1] Due to the significant privacy concerns in Social Security cases, plaintiffs are identified and referenced solely by initials in opinions issued by the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge**:

Plaintiff C.S. ("Plaintiff") asks this Court to reverse the final determination of the Commissioner of the Social Security Administration (respectively, "Commissioner" and "SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ") finding Plaintiff not disabled within the meaning of the Act.

## I. PROCEDURAL HISTORY

On May 31, 2022, Plaintiff filed a DIB application under Title II of the Act, alleging an onset date of disability of April 30, 2019. [Admin. R. 226–27.[2]] The ALJ initially denied Plaintiff's claim on December 27, 2022, and denied it again upon reconsideration on February 14, 2023. [*Id.* at 126–43.] Plaintiff then filed a timely written request for a hearing before an ALJ. [*Id.* at 144–45.]

That hearing took place on October 12, 2023, where Plaintiff was represented by an attorney and testified before the ALJ. [*Id.* at 41–71.] The ALJ also heard testimony from vocational expert ("VE") Daiva Grant. [*Id.* at 64–69.] On May 31, 2024, the ALJ issued a written opinion finding Plaintiff not disabled under the Act. [*Id.* at 14–34.] The Appeals Council denied Plaintiff's request for review on May 21, 2025. [*Id.* at 1–6.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g). [Docket No. 1 ¶ 4.]

---

[2] The corrected Administrative Record is found at Docket No. 6.

## II. STANDARD OF REVIEW

### A. The Disability Determination

To qualify for DIB, a claimant must show that she is disabled. 42 U.S.C. § 423. Under the Act, "a disability is established where the claimant demonstrates some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001) (citation and internal quotation marks omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-step process is as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, she is not disabled. *Id.* Otherwise, the ALJ moves to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits the claimant's physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, she is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If she has such an impairment, the ALJ moves to step three.
>
> At step three, the ALJ determines "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she does not, the ALJ moves to step four.
>
> At step four, the ALJ evaluates the claimant's "residual functional capacity" ("RFC") and whether she can perform her "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "RFC is the most she can still do despite her limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform her past relevant work despite her limitations, she is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she cannot, the ALJ moves to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work," considering her "RFC, age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to a VE." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot, she is disabled.

*Hess*, 931 F.3d at 201–02 (citation modified).

### B. The Substantial Evidence Standard

The Act grants federal courts limited power to review decisions of the Commissioner denying disability applications. 42 U.S.C. § 405(g). Although courts fully review all legal issues decided by the Commissioner, *Knepp v. Apfel*, 204 F.3d 78,

83 (3d Cir. 2000), the Act requires courts to uphold factual decisions made by the Commissioner if they are supported by "substantial evidence," 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). This evidentiary threshold is "not high" and "means only . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting *de novo* [it] might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). It is not for courts to "weigh the evidence or substitute [their own] conclusions for those of the [Commissioner.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the substantial-evidence inquiry is not "a talismanic or self-executing formula for adjudication;" a court must still perform "a qualitative exercise without which … review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). When reviewing the Commissioner's decision, a court must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (citation and internal quotation marks omitted).

Where, as here, the Appeals Council denies a claimant's request for review of an ALJ's decision, that "decision is the Commissioner's final decision." *Matthews v.*

*Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's determination must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ needs to explain the evidence considered that "supports the result" and provide "some indication of the evidence … rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, a court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. A court will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli*, 247 F.3d at 41–42.

## III. FACTUAL BACKGROUND

### A. Plaintiff's Age, Education, and Work History

The Court recounts only those facts necessary to adjudicate this appeal. As of the alleged disability onset date, Plaintiff was thirty-nine years old. [Admin. R. 21, 226.] Plaintiff has at least a high-school education and previously worked as a material handler. [*Id.* at 32.]

### B. The ALJ's Decision

The ALJ found Plaintiff not disabled. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 30, 2019, the alleged disability onset date. [*Id.* at 17.]

At step two, the ALJ found the following medically determinable impairments severe: anxiety disorder; cervical disc disease; cervicogenic headaches; depression

disorder; diabetes mellitus; and status post right shoulder arthroscopies. [*Id.*] The ALJ conversely found that Plaintiff's obesity was a non-severe medically determinable impairment. [*Id.*]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [*Id.* at 18–20.] Physically, the ALJ determined that Plaintiff did not meet the requirements of *per se* disability under Listings 1.15 and 1.18; nor those of mental Listings 12.04 and 12.06. [*Id.*] The ALJ did, however, find a moderate limitation in each of the four mental areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [*Id.* at 19–20.]

At step four, the ALJ found that Plaintiff has the RFC:

> [T]o perform light work as defined in 20 CFR [§] 404.1567(b) except claimant can lift and carry twenty pounds occasionally, and ten pounds frequently. Claimant can sit for six hours and can stand and walk for six hours. Claimant cannot climb ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch, and crawl. Claimant should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery. Claimant can frequently reach with her right dominant arm. Additionally, claimant can follow simple instructions. She can tolerate occasional interaction with [the] public and coworkers, and adapt to simple changes.

[*Id.* at 20.] The ALJ further found that Plaintiff could not perform any past relevant work experience. [*Id.* at 32.]

At step five, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her age,

education, work experience, and RFC. [*Id.* at 32–33.] Crediting the VE's testimony, the ALJ found that Plaintiff could perform the requirements of representative occupations such as a marker,[3] assembler, and router. [*Id.* at 33.] Consequently, the ALJ determined that Plaintiff was not disabled. [*Id.* at 33–34.]

## IV. DISCUSSION

Plaintiff raises three arguments in support of remand. First, she argues that the ALJ erroneously determined that she was not *per se* disabled at step two. [Docket No. 5, at 13–18 ("Pl. Br.").] Second, that the ALJ's RFC does not accurately reflect her physical and mental impairments. [*Id.* at 18–25.] And third, that the ALJ's step-five other-jobs finding is not supported by substantial evidence. [*Id.* at 25–26.]

### A. The ALJ's Step-Two Analysis is Supported by Substantial Evidence

Plaintiff challenges the ALJ's determination that she did not satisfy the requirements to be *per se* disabled under physical Listings 1.15 and 1.18 and mental Listings 12.04 and 12.06. [Pl. Br. 13–18.] Plaintiff argues first that the ALJ baselessly ignored the conclusion of impartial medical expert Douglas Shepard, M.D., that she satisfied the requirements of Listing 1.15. [*Id.* at 14–15.] As for the mental Listings, the ALJ allegedly offered conclusory findings shorn of evidentiary support. [*Id.* at 15–17.] Because the ALJ exhaustively reviewed the objective medical evidence on these issues, the Court disagrees.

[3] As evidenced by the VE's testimony, Plaintiff is correct that the ALJ's use of "maker" "is a typo." [Pl. Br. 13 n.6]; *see* [Admin. R. 66.]

**1. Listings 1.15 and 1.18**

Following a work-related accident in 2011, Plaintiff expressed pain and difficulties afflicting her back and right shoulder. [Admin. R. 21.] While acknowledging Plaintiff's evidence, the ALJ noted "inconsisten[cies]." [*Id.* at 23.] Prior to her alleged 2019 disability onset date, the ALJ found that Plaintiff experienced "some relief" from her work-related injury "through physical therapy, pain management[,] and epidural steroid injections." [*Id.*] The ALJ also noted that Plaintiff underwent "right shoulder surgery with[] some improvement postoperatively" in 2018. [*Id.*]

Post-disability onset date, the ALJ found persuasive the medical opinions of several doctors that supported a light-range-of-work capability. In May 2021, Howard Sharf, M.D., conducted a C5-C6 arthroplasty and discectomy on Plaintiff "with seemingly satisfactory pain relief and improvement in range of motion." [*Id.* at 25.] In September of that year, consultative examiner Thomas Woloszyn, M.D., concluded that Plaintiff's upper and lower extremities were relatively normal, albeit observing right shoulder difficulties: Plaintiff could "sit and stand;" "get on and off the exam room table without difficulty;" "squat halfway and was able to heel and toe walk;" her "elbow and wrist range of motion was full;" her "median, ulnar, and radial motor exams were within normal limits;" her "biceps, triceps, and brachioradialis deep tendon reflexes were symmetric;" and an "evaluation of lower extremities including hip, knee and ankle demonstrated full active and passive range of motion." [*Id.* at 25–26.]

For her right shoulder, Plaintiff underwent a second right shoulder arthroscopy in 2023 that resulted in "seemingly satisfactory pain relief." [*Id.* at 26.] Plaintiff's right shoulder pain persisted, but continued physical therapy "help[ed]," and Plaintiff "reported no pain and stated that her shoulder pain was 0/10 without medication" in August 2023. [*Id.* at 27.]

The ALJ considered, too, past administrative medical findings. In October 2021, Toros Shahinian, M.D., a state agency medical consultant, found that Plaintiff "can occasionally climb ramps and stairs," "can occasionally balance, stoop, kneel, crouch, or crawl," and had "no manipulative limitations." [*Id.* at 29.] Another state agency medical consultant, Renu Debroy, M.D., similarly opined in December 2022 that Plaintiff could "occasionally climb ramps and stairs," "balance, stoop, kneel, crouch or crawl and is unlimited for balancing," and could "perform overhead reach occasionally and frequently perform gross and fine manipulation with her right upper extremity." [*Id.* at 30.]

Contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Shepard's opinion. Upon review, the ALJ thought Dr. Shepard's opinion "somewhat persuasive to the extent he found that [Plaintiff] can perform [a] light range of work, with occasional postural and environmental limitations which are consistent with the record." [*Id.* at 31.] The ALJ contrarily found Dr. Shepard's *per se* disability finding unpersuasive, remarking that Dr. Shepard's "notation of meeting a [L]isting had no explanation and nothing in the record or Dr. Shepard's comments support [L]isting level impairment."

[*Id.* at 31–32.] The ALJ "further note[ed] that Dr. Shepard's additional explanation at the end of the report was incoherent at times and not considered."[4] [*Id.* at 31.]

After review, the ALJ ultimately determined that "the medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment." [*Id.* at 18.] Nor did the ALJ credibly find that any "treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment." [*Id.*]

The discussion above belies Plaintiff's contention that the ALJ "merely substitut[ed] her claimed medical expertise for that of a doctor" with whom she disagreed. [Pl. Br. 15.] The ALJ's step-two determination that Plaintiff is not *per se* disabled under physical Listings 1.15 and 1.18 is supported by substantial evidence and does not call for remand.[5]

---

[4] For example, Dr. Shepard wrote, "This individual sustained index injury if you have several spine craigslist app and right shoulder when I'm moving your truck and of course like | just want to have the Postal Service for 9/11/11" in response to question 11 on the form. [Admin. R. 1601.]

[5] The Commissioner argues that the ALJ's *per se* disability finding is supported by substantial evidence because Listings 1.15 and 1.18 required Plaintiff "to show that she required a walker, two cranes, or two crutches, or a wheel and seated mobility device for a continuous period of at least 12 months." [Docket No. 7, at 4.] The ALJ did in fact find that there was "no indication for a cane or other assistive device, and there is no indication that she is capable of less than full time nor that she can perform less than frequent manipulation." [Admin. R. 18.] Plaintiff correctly retorts that she may still show a *per se* disability under Listings 1.15 and 1.18 for "[a]n inability to use *both* upper extremities to the extent that neither can be used to independently initiate,

**2. Listings 12.04 and 12.06**

As for the ALJ's step-two analysis as to mental Listings 12.04 and 12.06, the Court finds the same. As relevant here, to qualify under Listing 12.04 or 12.06, Plaintiff must meet the requirements of Paragraphs A and B. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. Paragraph B required Plaintiff to show either an extreme limitation of one, or marked limitation of two, of the four known areas of mental functioning. *Id.* §§ 12.04(B), 12.06(B). The ALJ found that Plaintiff had moderate limitations in each of the four areas. [Admin. R. 19–20.] Plaintiff challenges the ALJ's assessment of her mental limitations under Paragraph B as "conclusion[s] with no actual explanation." [Pl. Br. 15.] The ALJ's Opinion shows otherwise.

For interacting with others, the ALJ found a moderate limitation because Plaintiff "stated that she spends time with her mother and children. Additionally, she denied ever [having] been fired from a job due to problems getting along with others." [Admin. R. 19.] In Plaintiff's view, the ALJ erroneously relied upon this evidence because this interactive ease all occurred "before her injuries and her constant pain." [Pl. Br. 16.] But the ALJ's findings were based on a Function Report that Plaintiff completed in August 2021 in support of her DIB application—around a decade after

---

sustain, and complete work-related activities involving fine and gross movements." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(D)(3), § 1.18(D)(3) (emphasis in original); [Docket No. 8, at 4–5.] For the reasons above, though, the ALJ's step-two determination is supported by substantial evidence. *See, e.g.*, [Admin. R. 25 ("The record further reveals that [Plaintiff] can frequently reach with her right dominant arm.").]

the 2011 work injury giving rise to "her injuries and her constant pain" and about two years after her alleged disability onset date. [Admin. R. 19 (citing *id.* at 281–82).]

Plaintiff also omits the ALJ crediting the 2021 administrative psychological opinion of state agency psychological consultant Helen Feldman, Psy.D. [*Id.* at 29–30.] Dr. Feldman—who "has specialized, programmatic knowledge of Social Security disability regulations and had access to [Plaintiff's] complete medical records as they existed at the times of her review"—concluded that Plaintiff "can follow simple instructions, relate and adapt in simple work like settings." [*Id.* at 29–30.] While finding "generally persuasive" Dr. Feldman's opinion that Plaintiff had a mild limitation in this area, the ALJ concluded after considering all the objective medical evidence that Plaintiff's limitation was in fact one scale higher at moderate, albeit not satisfactory for the purposes of *per se* disability under Paragraph B.[6] [*Id.*]

The same goes for the 2021 administrative findings of Olga Tchikindas-Glikman, Psy.D., and the 2023 administrative affirmation of Dr. Tchikindas-Glikman

---

[6] The ALJ also found Dr. Feldman's administrative conclusions generally persuasive because they were:

> [G]enerally consistent with the substantial mental evidence, including the overall clinical findings and signs of the claimant's mental functioning, as evidenced by mental status examinations and clinical observations made by providers; the claimant's lack of formal mental health treatment; and the claimant's fairly broad range of daily and other activities. As such, the undersigned finds that Dr. Feldman's prior administrative psychological finding is generally persuasive but has placed some of the limitations into more vocationally relevant terms.

[Admin. R. 30.]

by Teissy Meza, Psy.D. The ALJ likewise found their mild-limitation determination "somewhat persuasive," and independently concluded that Plaintiff suffers from a moderate limitation after reviewing the objective medical evidence.[7] [*Id.* at 31.]

As for the other three mental areas—understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself—Plaintiff disputes the ALJ's moderate-limitation determinations as "ignore[ing] the specific findings of" Theodore Brown, Jr., Ph.D., H.S.P.P. [Pl. Br. 16–17.] After examining Plaintiff in 2021 and 2022, Dr. Brown found, among other things, that Plaintiff "appeared to be learning disabled, cognitively impaired, and should not be allowed to manage her own funds," [Admin. R. 29–30], sure signs of

---

[7] The ALJ specifically found Drs. Tchikindas-Glikman's and Meza's findings somewhat persuasive because:

> [T]hey are supported because as a psychological consultant, they have specialized, programmatic knowledge of Social Security disability regulations and had access to the claimant's complete medical records as they existed at the times of her review. [T]he psychological consultants' prior administrative psychological finding are generally consistent with the substantial mental evidence, including the overall clinical findings and signs of the claimant's mental functioning, as evidenced by mental status examinations and clinical observations made by providers; the claimant's lack of formal mental health treatment, and the claimant's fairly broad range of daily and other activities. As such, the undersigned finds that the psychological consultants' prior administrative psychological finding[s] are somewhat persuasive. However, the record reveals that the claimant has moderate limitations in and has limited the claimant to simple task[s].

[Admin. R. 31.]

marked limitations in the three remaining mental areas according to Plaintiff [Pl. Br. 17].

Plaintiff, however, ignores the other medical evidence considered by the ALJ. For each of these three mental areas, the ALJ found countervailing evidence that Plaintiff "washes dishes, does light dusting, … and cooks. She indicated that she drives, pays bills, counts change, shops in stores, handles a savings account and uses checkbook/money orders." [Admin. R. 19–20 (citing *id.* at 280).] And, as stated above, the ALJ also found Dr. Feldman's mild- and moderate-limitations determinations "generally persuasive," but accordingly assigned moderate limitations to all three mental areas after independent review. [*Id.* at 29–30.] The ALJ similarly found Dr. Tchikindas-Glikman's and Meza's mild-limitations findings "somewhat persuasive" and independently assigned moderate limitations after reviewing the objective medical evidence. [*Id.* at 31.]

In the face of this objective medical evidence, the ALJ found Dr. Brown's two medical opinions "somewhat consistent with the totality of the evidence," namely Plaintiff's "activities of daily living, which are adequate and include driving, shopping in stores and caring for her children." [*Id.* at 29–30.] The ALJ was "somewhat persuas[ed]" by Dr. Brown's opinions, but ultimately found that Plaintiff's limitations in the three remaining areas were moderate. [*Id.*]

In the end, Plaintiff's first challenge invites the Court "to re-weigh the evidence in h[er] favor, something the Court may not do." *J.M. v. Comm'r of Soc. Sec.*, No. 24-8438, 2025 WL 3312259, at *7 (D.N.J. Nov. 28, 2025) (citing *Chandler v. Comm'r of*

*Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)) ("[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations."); *see also Rutherford*, 399 F.3d at 552; *Hunter Douglas*, 804 F.2d at 812. The ALJ's determinations that Plaintiff is not *per se* disabled under Listings 1.15, 1.18, 12.04, and 12.06 are supported by substantial evidence. The Court will not disturb them.

**B. The ALJ's Step-Four RFC is Supported by Substantial Evidence**

Plaintiff next objects to the RFC. For many of the same reasons explicated above, the Court finds the RFC supported by substantial evidence. At step four, the ALJ found that Plaintiff has the RFC:

> [T]o perform light work as defined in 20 CFR [§] 404.1567(b) except claimant can lift and carry twenty pounds occasionally, and ten pounds frequently. Claimant can sit for six hours and can stand and walk for six hours. Claimant cannot climb ladders, ropes or scaffolds and can occasionally balance, stoop, kneel, crouch, and crawl. Claimant should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery. Claimant can frequently reach with her right dominant arm. Additionally, claimant can follow simple instructions. She can tolerate occasional interaction with [the] public and coworkers, and adapt to simple changes.

[Admin. R. 20.] Plaintiff first argues that the ALJ "fail[ed] to account for the nature and extent of all of her conditions necessitating three surgeries over a period in excess of four years." [Pl. Br. 25.] The Court finds differently.

After reciting Plaintiff's relevant evidence,[8] the ALJ found that Plaintiff experienced "some relief" from her 2011 work-related injury prior to her alleged 2019

---

[8] To the extent Plaintiff relies on her hearing testimony, [Pl. Br. 20–21], "[a]lthough ALJs must consider [a] claimant['s] subjective complaints, they are not obligated to credit them," *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 495 (D.N.J. 2022) (citations

disability onset date "through physical therapy, pain management[,] and epidural steroid injections." [Admin. R. 23.] The ALJ similarly concluded that Plaintiff underwent "right shoulder surgery with[] some improvement postoperatively" in 2018. [*Id.*]

To be sure, Plaintiff continued to suffer from pain and discomfort in the years to follow, as observed by the ALJ. *See* [*id.* at 23–32.] But the ALJ considered the results of Plaintiff's two additional surgeries and the other objective medical evidence to ultimately conclude that Plaintiff could perform a range of light work. As stated above, Plaintiff's 2021 C5-C6 arthroplasty and discectomy resulted in "seemingly satisfactory pain relief and improvement in range of motion," and her second right shoulder arthroscopy in 2023 led to "seemingly satisfactory pain relief."[9] [*Id.* at 25–26.] Pain persisted for Plaintiff, but physical therapy "help[ed]" and Plaintiff "reported no pain and stated that her shoulder pain was 0/10 without medication" in August 2023. [*Id.* at 27.] This evidence, alongside the other objective medical evidence considered by the ALJ, indicates that the RFC is supported by substantial evidence on this issue.[10]

---

omitted). Here, the ALJ comprehensively evaluated Plaintiff's subjective complaints alongside the other objective medical evidence to arrive at the RFC. [Admin. R. 23–32.]

[9] For these reasons, Plaintiff's reliance on Dr. Woloszyn's 2021 report—untethered from the rest of the objective medical evidence—documenting shoulder issues is unavailing. [Pl. Br. 21–22.]

[10] Relatedly, Plaintiff contends that the ALJ inappropriately gave greater weight to non-examining doctors who rendered "their varied opinions on the basis of an

Plaintiff also avers that the ALJ found her severe diabetes mellitus "irrelevant to" the RFC and "chose to ignore its significance." [Pl. Br. 21.] That is not so. The ALJ specifically acknowledged Plaintiff's chronic urination and complications for other treatments caused by her diabetes mellitus, as well as its "uncontrolled" nature "at times." [Admin. R. 21–24.] But, as she concedes in her brief, Plaintiff represented at the hearing that her diabetes mellitus "does not by itself create[] any particular problems for working" and that she "was not taking her medications" for it "at times." [*Id.* at 23–24.]

Moreover, the ALJ holistically considered Plaintiff's diabetes mellitus with the other objective medical evidence to arrive at the RFC. *See* [*id.* at 23–32.] For example, the ALJ found Dr. Woloszyn's examination of Plaintiff, which took account of her diabetes mellitus, "somewhat persuasive" and "supportive of a finding that [she]

---

incomplete record." [Pl. Br. 21.] Plaintiff identifies no specific doctors and fails to explain how their opinions were based on incomplete records. *See* [*id.*] It is not for the Court to guess what they may be. It must be noted, parenthetically, that "an ALJ may give more weight to the opinion of a source that did not examine a claimant pursuant to the other statutory factors." *Wilson v. Colvin*, No. 13-709, 2015 WL 140036, at *18 (M.D. Pa. Jan. 12, 2015) (citing 20 C.F.R. § 404.1527(c)). For example, § 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion," and § 404.1527(c)(5) provides more weight to specialists. Plaintiff's conclusory argument does not engage with this framework. And, to the extent she once more relies on Dr. Shepard's 2024 report, [Pl. Br. 22], the ALJ actually believed his opinion "somewhat persuasive to the extent he found that [Plaintiff] can perform [a] light range of work, with occasional postural and environmental limitations which are consistent with the record," [Admin. R. 31]. The ALJ went on to discuss the unpersuasive bits of Dr. Shepard's report, considered "[o]verall" with the other medical evidence. [*Id.* at 31.] Plaintiff herself points out Dr. Shepard's faulty report, problematizing the fact that he "check[ed] both never and occasionally … lifting up to 20 pounds." [Pl. Br. 22 n.9.]

retains the [RFC] for [a] light range of work." [*Id.* at 25, 29.] The RFC in this respect, too, is supported by substantial evidence. Plaintiff's first two arguments here are ones which impermissibly require the Court to reweigh the evidence. *Rutherford*, 399 F.3d at 552; *Hunter Douglas*, 804 F.2d at 812; *J.M.*, 2025 WL 3312259, at *7.

Plaintiff lastly takes issue with the RFC's treatment of her mental impairments. In the RFC, the ALJ relevantly articulated that Plaintiff "can follow simple instructions. She can tolerate occasional interaction with [the] public and coworkers, and adapt to simple changes." [Admin. R. 20.] First, insofar as Plaintiff repackages her argument that the ALJ's *per se* disability finding is erroneous, [Pl. Br. 24], the Court rejected that argument above, *see supra* § IV.A.2. Second, to the extent Plaintiff argues that the RFC's interacting-with-others provision contradicts SSR 85-15, the Court does not agree. [Pl. Br. 24.]

"SSR 85-15 does not bar all unskilled work for individuals limited to occasional interaction with others." *Robin S. v. Comm'r of Soc. Sec.*, No. 24-06904, 2025 WL 1431084, at *9 n.3 (D.N.J. May 19, 2025) ("Plaintiff's argument that a limitation to occasional interaction with supervisors and coworkers is categorically inconsistent with the basic mental demands of unskilled work under SSR 85-15 is unavailing."). Instead, SSR 85-15 provides that a "substantial loss" of ability in any basic mental demand "would severely limit the potential occupational base." For interacting with others, the ALJ only found a moderate limitation, as discussed above, *see supra* § IV.A.2, and the VE identified specific jobs Plaintiff could perform despite her social limitations upon solicitation from the ALJ at the hearing, [Admin. R. 65–68]. "The

ALJ was entitled to rely on that testimony. Courts have rejected nearly identical challenges in this context." *Robin*, 2025 WL 1431084, at *9 n.3 (citing *Salgado v. Kijakazi*, No. 20-6094, 2021 WL 3630479, at *7 (E.D. Pa. Aug. 16, 2021) (rejecting argument that SSR 85-15 precludes unskilled work where claimant limited to occasional contact with supervisors)); *see also Kristen A. v. Comm'r of Soc. Sec.*, No. 24-11343, 2025 WL 3514571, at *6 (D.N.J. Dec. 8, 2025) (quoting *Rebecca v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022)) ("[C]ourts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public."). In this respect then, the RFC is supported by substantial evidence.

### C. The ALJ's Step-Five Finding that Other Jobs Exist in Significant Numbers in the National Economy is Supported by Substantial Evidence

Finally, Plaintiff posits that the ALJ's step-five other-jobs finding is not supported by substantial evidence because "the [RFC] is not accurate." [Pl. Br. 25.] Based on the Court's contrary finding on the RFC, it stands to reason that Plaintiff's argument here must fail. *See supra* § IV.B.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the ALJ's decision. An accompanying Order shall issue.

**September 25, 2026**
Date

**/s/ Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge